IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

**RANDOLPH W. ROBINSON,**

        **Petitioner,**

**vs.**                                                             Civil No.  15-cv-191-DRH-CJP

**JAMES N. CROSS, JR.,**

        **Respondent.**

**MEMORANDUM and ORDER**

**HERNDON, District Judge:**

This matter is now before the Court on respondent's motion to dismiss petitioner's petition for writ of wabeas corpus pursuant to 28 U.S.C. §2241. (Doc. 15). Petitioner has not responded to the motion, and the time for doing so has now expired. The Court deems the failure to respond to be an admission of the merits of the motion pursuant to SDIL-LR 7.1(c).

In 2006, a jury in the Middle District of Georgia convicted petitioner Randolph W. Robinson of conspiracy to commit armed bank robbery, armed bank robbery, and use of a firearm during a crime of violence in violation of 18 U.S.C. §924(c). He was sentenced to 60 months imprisonment on Count 1 and 77 months on Count 2, to run concurrently. He was sentenced to 84 months on Count 3 (use of a firearm during a crime of violence), to be served consecutively to the other two sentences. The jury acquitted Robinson on Count 4, felon in possession of a firearm. *U.S.A. v. Robinson*, et al, Case No. 05-cr-036-CDL-MSH Docs. 122 (Verdict) and 158 (Judgment).

At issue here is the conviction on Count 3 for use of a firearm during a crime of violence. Petitioner's conviction arises out of his aiding and abetting his co-defendant's use of a firearm during a bank robbery. Robinson argues that he is entitled to habeas relief on that conviction under *Rosemond v. United States*, 134 S. Ct. 1240 (2014).

### **Relevant Facts and Procedural History**

Robinson was indicted in the Middle District of Georgia along with two codefendants, John McQueen and Candace Collins. *U.S.A. v. Robinson*, et al, Case No. 05-cr-036-CDL-MSH, Doc. 1. McQueen and Collins entered guilty pleas and became cooperating witnesses. Docs. 67-72.

The evidence at Robinson's trial was summarized by the government in its motion to dismiss. These factual assertions are supported by citations to the trial transcript. Again, Robinson has not challenged the government's description of the evidence.

> As a cooperating witness, McQueen testified at Robinson's trial that Petitioner arranged for McQueen's pre-trial release on pending charges and later suggested they should rob a bank. (Crim. Doc. #146, at 154-58). Although the two of them planned the bank robbery together, Robinson supplied the money to purchase necessary items such as a pair of walkie-talkies and batteries for the devices, a bicycle chain and lock, and gloves for McQueen to wear inside the bank. (Crim. Doc. #146, at 158-63). The walkie-talkies were to be used for the two of them to communicate before and after the robbery. (Crim. Doc. #146, at 162-63).
>
> In August 2005, Robinson told Collins, a cooperating witness who testified at trial, that Robinson planned to rob a bank and was going to use McQueen. (Crim. Doc. #147, at 81, 222, 229). Evidence of surveillance photographs and a K-Mart receipt corroborated Robinson's purchase on September 8, 2005 for the walkie-talkies, batteries used for the walkie-talkies, and a cable-link padlock that were all linked to the robbery. (Crim.

>Doc. #147, at 185-204; 231-32, Crim. Doc. #148, at 93-94). McQueen testified Robinson went inside the K-Mart to make the purchases. (Crim. Doc. #146, at 162). Furthermore, the photographs from K-Mart's internal cameras allowed the jury to determine that Robinson (wearing his distinctive togs) was at least present in the K-Mart that day. (Crim. Doc. #146, at 162). Lastly, the police recovered a walkie-talkie, identical to that purchased at K-Mart, from the residence of Robinson's girlfriend. (Crim. Doc. #144, at 162-63, Crim. Doc. #147, at 195, Crim. Doc. #148, at 32-35).
>
>On the day of the robbery, Robinson used his car to pick up McQueen and drove them to a nearby trailer belonging to Robinson's brother so McQueen could dress in disguise. (Crim. Doc. #146, at 165-66). Robinson provided the handgun and the fake bomb to McQueen. (Crim. Doc. #146, at 166-67). Afterwards, Robinson drove McQueen to a location near the bank where a bicycle was chained and waiting for McQueen's short ride to the bank. (Crim. Doc. #146 at 159-60, 167-68, 229-31). Robinson used the walkie-talkie he purchased to signal to McQueen that the robbery should proceed. (Crim. Doc. #146, at 168).

Doc. 15, pp. 10-11.

There was also evidence that, after the robbery, Robinson did not appear at the agreed-upon meeting place. However, Robinson and McQueen eventually met up. Robinson drove McQueen to the place where McQueen had hidden the money he stole from the bank, and drove McQueen back to the trailer belonging to Robinson's brother, where they split the money. Robinson was contacted by law enforcement in the late afternoon and early evening on the day of the robbery. He then left a message at McQueen's residence instructing McQueen to "lay low." Doc. 15, pp. 11-12.

On direct appeal, Robinson argued that (1) the trial court erred in excluding as hearsay the testimony of his former attorney that another client told the attorney that McQueen made statements that could have exculpated Robinson;

3

and (2) the court erred in refusing to give a jury instruction on alibi where the evidence showed that Robinson was not present at the bank robbery. His conviction and sentence were affirmed. *United States v. Robinson*, 239 Fed. App. 507, 2007 WL 2028041(11th Cir. 2007)(unpublished order).

In his §2255 motion, Robinson argued that (1) defense counsel was ineffective for failing to strike a juror for cause and failing to adequately cross-examine a witness; (2) appellate counsel was ineffective for failing to challenge the sufficiency of the evidence and failing to argue that the jury instruction on aiding and abetting the §924(c) violation was erroneous; (3) the evidence was insufficient to support the conviction for aiding and abetting the §924(c) violation because the government did not show that petitioner had a "practical certainty" that his conspirator would use a firearm, and there was no definitive link established between petitioner and the firearm; and (4) the jury instruction on aiding and abetting was erroneous because it did not require proof that petitioner knew with "practical certainty" that McQueen would use a firearm during the robbery. *U.S.A. v. Robinson*, et al, Case No. 05-cr-036-CDL-MSH, Doc. 159. The District Judge denied both the motion and a certificate of appealability. Docs. 164, 168, 172. Robinson's point regarding the jury instruction was denied based on Eleventh Circuit precedent. See, Doc. 164, pp. 7-9. The Eleventh Circuit also denied a certificate of appealability. Doc. 183.

In June 2014, Robinson filed an application for leave to file a second or successive §2255 motion, citing *Rosemond v. United States*, 134 S. Ct. 1240

4

(2014). The Eleventh Circuit denied the application because *Rosemond* did not announce a new rule of constitutional law and therefore a subsequent motion was not authorized under 28 U.S.C. §2255(h)(2). *In re Robinson*, Case No. 14-12423 (11th Cir. 2014).

## Applicable Law

**1.   Law Applicable to §2241 Petition**

Generally, petitions for writ of habeas corpus under 28 U.S.C. §2241 may not be used to raise claims of legal error in conviction or sentencing, but are limited to challenges regarding the execution of a sentence. See, *Valona v. United States*, 138 F.3d 693, 694 (7th Cir.1998).

A motion pursuant to 28 U.S.C. §2255, filed in the court which sentenced him, is the usual vehicle by which a federally convicted person may challenge his conviction and sentence. Indeed, a §2255 motion is ordinarily the "exclusive means for a federal prisoner to attack his conviction." *Kramer v. Olson*, 347 F.3d 214, 217 (7th Cir. 2003). The statute generally limits a prisoner to *one* challenge of his conviction and sentence under §2255. A prisoner may not file a "second or successive" motion unless a panel of the appropriate court of appeals certifies that such motion contains either 1) newly discovered evidence "sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," or 2) "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. §2255(h).

It is possible, under very limited circumstances, for a prisoner to challenge his federal conviction or sentence under §2241. 28 U.S.C. §2255(e) contains a "savings clause" which authorizes a federal prisoner to file a §2241 petition where the remedy under §2255 is "inadequate or ineffective to test the legality of his detention." 28 U.S.C. §2255(e). See, *United States v. Prevatte*, 300 F.3d 792, 798–99 (7th Cir.2002). "A procedure for postconviction relief can be fairly termed inadequate when it is so configured as to deny a convicted defendant any opportunity for judicial rectification of so fundamental a defect in his conviction as having been imprisoned for a nonexistent offense." *In re Davenport*, 147 F.3d 605, 611 (7th Cir. 1998)

The Seventh Circuit has explained that, in order to fit within the savings clause following *Davenport,* a petitioner must meet three conditions. First, he must show that he relies on a new statutory interpretation case rather than a constitutional case. Secondly, he must show that the decision he relies upon post-dates his first §2255 motion *and* that case must apply retroactively. Lastly, he must demonstrate that there has been a "fundamental defect" in his conviction or sentence that is grave enough to be deemed a miscarriage of justice. *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013). See also, *Brown v. Rios*, 696 F3d 638, 640 (7th Cir. 2012).

2. *Rosemond v. United States*

Justus Rosemond was convicted of violating §924(c) by aiding and abetting the use of a firearm during the commission of a drug trafficking crime. At trial,

the court refused his proposed jury instruction on aiding and abetting liability. On direct appeal, he challenged the aiding and abetting jury instruction given by the court. The Tenth Circuit rejected his argument, and the Supreme Court granted certiorari "to resolve the Circuit conflict over what it takes to aid and abet a §924(c) offense." *Rosemond v. United States*, 134 S. Ct. 1240, 1245 (2014).

Rosemond argued that he could be convicted of aiding and abetting a §924(c) violation only if he intentionally took "some action to facilitate or encourage his cohort's use of the firearm." The Supreme Court disagreed with that position, but agreed that the jury instruction given by the court was erroneous for a different reason. *Rosemond*, 134 S. Ct. at 1244-1245.

18 U.S.C. § 2(a) provides that a person who "aids, abets, counsels, commands, induces or procures" the commission of a federal offense is "punishable as a principal." In *Rosemond*, the Supreme Court noted the long-standing rule that "a person is liable under §2 for aiding and abetting a crime if (and only if) he (1) takes an affirmative act in furtherance of that offense, (2) with the intent of facilitating the offense's commission." *Rosemond*, 134 S. Ct. at 1245. The question before the Court was "how those two requirements – affirmative act and intent – apply in a prosecution for aiding and abetting a §924(c) offense." *Ibid.*

In general, a person can be convicted of aiding and abetting an offense without proof that he took part in every element of the offense. Thus, a person can aid and abet a violation of §924(c) by acting to bring about either, as in

7

*Rosemond*, the drug trafficking offense or the use of a firearm; it is not necessary that he physically participate in both. "In helping to bring about one part of the offense (whether trafficking drugs or using a gun), he necessarily helped to complete the whole. And that ends the analysis as to his conduct." *Rosemond*, 134 S. Ct. at 1246-1247.

The government must show more, however, than physical participation in one or more elements of the violation of §924(c). The Supreme Court described §924(c) as establishing a "combination crime," meaning that it "punishes the temporal and relational conjunction of two separate acts, on the ground that together they pose an extreme risk of harm." Accordingly, "an aiding and abetting conviction requires not just an act facilitating one or another element, but also a state of mind extending to the entire crime." In other words, the evidence must establish that the defendant intended to bring about the "illegal scheme in its entirety – including its use of a firearm." *Rosemond*, 134 S. Ct. at 1248-1249.

The Supreme Court noted that it had previously found the intent requirement for aiding and abetting "satisfied when a person actively participates in a criminal venture with full knowledge of the circumstances constituting the charged offense." The Court cited earlier Supreme Court cases from 1947 and 1954 to illustrate this point. The Court went on to say that "The same principle holds here: An active participant in a drug transaction has the intent needed to aid and abet a §924(c) violation when he knows that one of his confederates will carry a gun. In such a case, the accomplice has decided to join in the criminal

8

venture, and share in its benefits, with full awareness of its scope—that the plan calls not just for a drug sale, but for an armed one." *Rosemond,* 134 S. Ct. at 1248-49. The Court went on to explain:

> For all that to be true, though, the §924(c) defendant's knowledge of a firearm must be advance knowledge—or otherwise said, knowledge that enables him to make the relevant legal (and indeed, moral) choice. When an accomplice knows beforehand of a confederate's design to carry a gun, he can attempt to alter that plan or, if unsuccessful, withdraw from the enterprise; it is deciding instead to go ahead with his role in the venture that shows his intent to aid an armed offense. But when an accomplice knows nothing of a gun until it appears at the scene, he may already have completed his acts of assistance; or even if not, he may at that late point have no realistic opportunity to quit the crime. And when that is so, the defendant has not shown the requisite intent to assist a crime involving a gun. . . . For the reasons just given, we think that means knowledge at a time the accomplice can do something with it—most notably, opt to walk away.

*Rosemond*, 134 S. Ct. at 1249-50.

The Supreme Court went on to hold that the jury instruction given by the district court was erroneous because it did not require the jury to find that Rosemond had to have "advance knowledge" that a firearm would be present. The Supreme Court did not, however, vacate Rosemond's conviction. Rather, it remanded for further proceedings. *Rosemond*, 134 S. Ct. at 1251-1252.

The Seventh Circuit considered the effect of *Rosemond* in *United States v. Newman*, 755 F.3d 543 (7th Cir. 2014), a case on direct appeal. Newman had pleaded guilty to being a felon in possession of a firearm, and then moved to withdraw his plea. He appealed from the district court's denial of his motion to withdraw his plea. The facts established at the plea hearing were as follows:

Newman and James Misleveck escaped from Black River Correctional

9

> Center in Wisconsin. Misleveck soon stole a shotgun and ammunition. Newman and Misleveck then cooperatively stole a car and kidnapped its driver. Newman approached the driver and asked for a cigarette; while she was distracted, Misleveck approached her from behind, pointed the shotgun at her, and ordered her to get into the rear seat. Newman kept control of the victim for five hours while Misleveck drove. The pair released her and stole a pickup truck.

*Newman*, 755 F.3d at 544.

The Seventh Circuit held that the above facts established aiding and abetting liability under *Rosemond* because "Newman knew that Misleveck had and was wielding a gun, and he had plenty of time to walk away. Instead he maintained the cooperative venture. Under *Rosemond*, Newman is liable to the same extent as Misleveck." *Newman*, 755 F.3d at 546.

## Analysis

Respondent states that "the Department of Justice has issued a nation-wide directive to federal prosecutors that *Rosemond* announced a substantive rule that is retroactively applicable to cases on collateral review." Doc. 15, p. 7. Nevertheless, the Court notes that a number of courts have held that *Rosemond* does not apply retroactively to cases on collateral review. See, *Nix v. Daniels*, 2016 WL 126415, at *2 (S.D. Ind. Jan. 11, 2016)(collecting cases). The Seventh Circuit has not yet spoken on the issue, but has a case under submission, *Montana v. Cross*, Case No. 14-3313, wherein the issue has been raised.

This Court finds it unnecessary to determine whether *Rosemond* applies retroactively because, even if it does, petitioner would not be entitled to habeas relief. Therefore, the Court will assume for purposes of the present case that

10

*Rosemond* applies retroactively to cases on collateral review.

Robinson argues that he is entitled to habeas relief because the jury instruction given at his trial "failed to require that Robinson knew in advance that one of his cohorts would be armed." Doc. 1, p. 5. He also argues that *Rosemond* "narrowed the scope of aiding and abetting liability under 18 U.S.C. §924(c) because it requires a prosecutor to prove that an unarmed co-conspirator [such] as petitioner Robinson had advance knowledge that his confederate would carry a gun." Doc. 1, p. 9.

Respondent argues that §2255 is not inadequate as to Robinson because Robinson is not arguing that he is innocent of the offense. The Seventh Circuit has held that § 2255 is inadequate "when its provisions limiting multiple §2255 motions prevent a prisoner from obtaining review of a legal theory that establishes the petitioner's actual innocence." *Kramer*, 347 F.3d at 217; see also *In re Davenport*, 147 F.3d at 611 ("A federal prisoner should be permitted to seek habeas corpus only if he had no reasonable opportunity to obtain earlier judicial correction of a fundamental defect in his conviction or sentence because the law changed after his first 2255 motion.").[1]

The Court notes that the Seventh Circuit discussed the requirement that a petitioner must advance a legal theory that establishes his innocence of the offense in *Webster v. Daniels*, 784 F.3d 1123 (7th Cir. 2015). Webster had been sentenced to death, and he argued that his sentence was unconstitutional because

---

[1] Respondent makes an additional argument regarding "cause and prejudice" and procedural default in Section II of his motion. This argument is off the mark. Procedural default is not relevant here.

11

he was intellectually disabled.  The Seventh Circuit held that a petitioner who argues that a change in the law renders him subject to an unconstitutional sentence need not make a showing of innocence of the offense in order to fit within the savings clause.  *Webster*, 784 F.3d at 1138-1139.  However, this Court does not read *Webster* as eliminating the requirement that a petitioner making a claim like Robinson's advance a theory that establishes his innocence of the offense in order to fit within the savings clause.

Robinson bases his claim for habeas relief on the wording of the jury instruction given at his trial.  He unsuccessfully challenged both the jury instruction and the sufficiency of the evidence in his §2255 motion.  However, the fact that his §2255 motion was unsuccessful does not mean that §2255 is inadequate or ineffective.  *Webster,* 784 F.3d at 1136("[S]omething more than a lack of success with a section 2255 motion must exist before the savings clause is satisfied.")

Robinson does not argue he is entitled to habeas relief because *Rosemond* announced a new rule which makes the evidence presented at his trial insufficient to convict him of aiding and abetting a violation of §924(c).  In other words, petitioner does not argue that, after *Rosemond*, he is legally or factually innocent of aiding and abetting McQueen's §924(c) violation; he has not identified a "fundamental defect in his conviction or sentence" grave enough to amount to a miscarriage of justice.  *Brown v. Caraway*, 719 F.3d 583, 586 (7th Cir. 2013), citing *Brown v. Rios*, 696 F.3d 638, 640 (7th Cir. 2012), and *Davenport*, 174 F.3d

at 611. Therefore, he cannot proceed under §2241.

Clearly, the evidence that was presented at trial is more than sufficient for a properly-instructed jury to convict Robinson of aiding and abetting McQueen's violation of §924(c) after *Rosemond*. There was evidence that Robinson and McQueen planned the robbery, and that Robinson supplied McQueen with a handgun and a fake bomb, which McQueen used in the robbery. Robinson drove McQueen to the spot near the bank where a bicycle was waiting for McQueen, and used a walkie-talkie to signal to McQueen to go ahead with the robbery. Robinson later met up with McQueen and helped him to retrieve the stolen money. They then split up the proceeds of the robbery. Thus, there was direct evidence that Robinson knew in advance that the plan called for McQueen to use a firearm during the robbery, and there is no evidence that Robinson withdrew from the scheme. See, *Rosemond*, 134 S. Ct. at 1249-50.

Nothing in *Rosemond* suggests that Robinson is legally or factually innocent of aiding and abetting a violation of §924(c). Therefore, his petition does not fit within the savings clause of § 2255(e).

**Conclusion**

Respondent's Motion to Dismiss (Doc. 15) is **GRANTED**.

Randolph W. Robinson's Petition for a Writ of Habeas Corpus Under 28 U.S.C. §2241 (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.[2]

The Clerk of Court shall enter judgment in favor of respondent.

**IT IS SO ORDERED.**

**DATE:   March 3, 2016**

Digitally signed by Judge David R. Herndon
Date: 2016.03.03 10:52:07 -06'00'

**United States District Court**

---

[2] This Court has subject-matter jurisdiction pursuant to 28 U.S.C. 1331.  *Harris v. Warden*, 425 F.3d 386, 388 (7th Cir. 2005).   The determination that petitioner is not entitled to habeas relief because he cannot not fit within the savings clause of 28 U.S.C. § 2255(e) is an adjudication on the merits, and dismissal with prejudice is therefore proper.  See, *Paganis v. Blonstein*, 3 F.3d 1067, 1071 (7th Cir. 1993).

## **Notice**

If petitioner wishes to appeal the denial of his petition, he may file a notice of appeal with this court within 60 days of the entry of judgment. Fed. R. App. P. 4(a)(B). A motion for leave to appeal in forma pauperis should set forth the issues petitioner plans to present on appeal. See Fed. R. App. P. 24(a)(1)(C).

Petitioner is further advised that, if he intends to file a motion pursuant to Federal Rule of Civil Procedure 59(e), that motion must be filed no later than 28 days after the entry of the judgment—a deadline that cannot be extended. A proper and timely Rule 59(e) motion may toll the 60-day appeal deadline. Other motions, including a Rule 60 motion for relief from a final judgment, order, or proceeding, do not toll the deadline for an appeal.

It is not necessary for petitioner to obtain a certificate of appealability from this disposition of his §2241 petition. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).